T.C. Memo. 1999-251


UNITED STATES TAX COURT


RENEE B. SIMPSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16789-97.                        Filed July 29, 1999.


<u>Frederich Earl Liechti</u>, for petitioner.

<u>John M. Zoscak, Jr.</u>, for respondent.


MEMORANDUM OPINION


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the years at issue.  All Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $3,063 and $2,750 in petitioner's Federal income taxes for 1994 and 1995, respectively.

The issue for decision is whether petitioner must include payments from her former husband in income under section 71.

Some of the facts were stipulated and are so found. The stipulation of facts and annexed exhibits are incorporated herein by reference. Petitioner resided in Burgettstown, Pennsylvania, at the time her petition was filed.

Petitioner separated from her former husband, Barry Simpson, in January of 1990 and was divorced on September 30, 1993. During their period of separation, the Family Division of the Court of Common Pleas for Washington County, Pennsylvania (family court) entered an order requiring Mr. Simpson to make payments to petitioner in the following manner:

> AND NOW, this AUGUST 13, 1992, it is hereby ordered that the Payor pay to the Family Division, Court of Common Pleas SEVEN HUNDRED EIGHTEEN Dollars ($718.00) a month payable as follows: One half thereof on the 28TH day of AUGUST and the other half thereof on the 13TH day of SEPTEMBER and like and equal amounts on the 28TH and 13TH days of each and every month thereafter. Arrears are set at $2,154.00, as of 8-13-92 due in full IMMEDIATELY. Contempt proceedings will not be initiated as long as payor pays $25.00 per month on arrears, one half on each of the above dates. For the support of: SPOUSE AND TWO CHILDREN, SHANNON AND JEFFREY. ARREARS SET ABOVE ARE RETROACTIVE TO 5-8-92. (BASE ORDER AMOUNT IS CONSIDERED TO BE $1,287 MINUE [sic] $569 (REPRESENTING DEBTS PAYMTS TOWARDS: $70/MO DELINQ UTILITIES. $357/MO DIRECT PAYMT FOR MARITAL MORT AND $142/MO FOR PRO-RATED HOME EQUITY LOAN FOR

MARITAL DEBTS = $718/MO (MONEY ORDER AMT).  PARTIES TO
SHARE EQUALLY PAROCHIAL SCHOOL TUITION FOR SON WITH
BOTH PAYING TUITION DIRECTLY TO SCHOOL.  PLTF TO
MAINTAIN MED INS ON SELF AND CHILDREN AVAILABLE THROUGH
HER EMPLOYER AT REASONABLE COST. * * *

As stated in the order, Mr. Simpson was to make a monthly payment of $718 through the family court towards the support of his spouse and two children, Shannon and Jeffrey.  No specific amount of the payment was allocated to either spousal support or child support.

The family court order also stated that Mr. Simpson was to make monthly payments in the amounts of $70 towards delinquent utilities, $357 towards the marital mortgage, and $142 towards a home equity loan taken out during the marriage.  To the extent these debts were still outstanding, Mr. Simpson made the required payments directly to the third party creditors throughout 1994 and 1995.  Both the delinquent utility liability and the home equity loan were paid off prior to 1995.

On her 1994 and 1995 Federal income tax returns, petitioner excluded from income the monthly $718 payments she received from Mr. Simpson, as well as the amounts he paid directly toward the delinquent utilities, marital mortgage, and home equity loan.

Respondent determined, however, that because the court order did not fix any part of the monthly payments specifically as child support, the entire amount of Mr. Simpson's payment, including the amounts paid to third parties for outstanding

debts, was includable in petitioner's income as alimony or separate maintenance under section 71.

Gross income includes amounts received as alimony. See secs. 71(a), 61(a)(8). Alimony is defined by section 71(b)(1) as any cash payment meeting the following four criteria:

SEC. 71(b)(1). In general.--The term "alimony or separate maintenance payment" means any payment in cash if--

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

These requirements are limited by section 71(c), which provides that alimony shall not include any part of a payment which the terms of the divorce instrument fix as a sum payable for the support of the children of the payor spouse. Thus, if the payments made by Mr. Simpson to petitioner meet the requirements of the four enumerated criteria and are not fixed as child support, the payments are alimony and are includable in

petitioner's income.  We shall address each portion of the total monthly payment by Mr. Simpson separately.

Payment Through the Family Court

Mr. Simpson paid $718 each month to the family court pursuant to the court order entered into during his and petitioner's marital separation.  Although not made directly to petitioner, the payments were made on her behalf pursuant to a court order.  See sec. 71(b)(1)(A).

The court order states that Mr. Simpson's payments are for the support of his wife and children.  The award is not allocated in any way between spousal support and child support.  Petitioner argues that despite the unallocated award, the entire $718 should be attributable to child support because under the Pennsylvania Support Guidelines (guidelines), Mr. Simpson was required to pay $789 each month for the support of his two children.  The $789 required by the guidelines, petitioner argues, exceeds the amount ordered by the family court and therefore the entire $718 payment should be considered child support under section 71(c) for Federal income tax purposes.

We begin by examining the origin of the State-required guidelines.  In 1988, Congress mandated that each State establish

child support guidelines.[2] The Federal law contains a rebuttable presumption that the amount of child support awarded from application of the guidelines is correct. See 42 U.S.C. sec. 667(b)(2) (1994).

In Pennsylvania, the requirement of statewide guidelines was established by 23 Pa. Cons. Stat. sec. 4322 (1991). Rule 1910.16-5 of the Pennsylvania Rules of Civil Procedure sets forth the applicability of the guidelines in establishing child support, and provides that if a recommendation for support departs from the guidelines, the trial court is required to provide an explanation for the deviation. The guidelines utilize the net incomes of both parents and are based on the assumption that a child's needs increase as the combined net income of the parents increases. See Pa. R. Civ. Proc. 1910.16-1, Explanatory Comment B.2. Although the guidelines contemplate both allocated and unallocated awards, rule 1960.16-5(f) of the Pennsylvania

---

[2]See Child Support Enforcement Amendments of 1984, Pub. L. 98-378, sec. 18(a), 98 Stat. 1305, 1321, amended by the Family Support Act of 1988, Pub. L. 100-485, tit. I, sec. 103(a) and (b), 102 Stat. 2346.

Rules of Civil Procedure states that the grids[3] assume that an order will be unallocated.

Under Federal tax law, there are tax consequences resulting from an award's being classified as alimony or child support. Under section 215, an individual taxpayer is allowed to deduct amounts paid as alimony. Alimony payments are includable in the gross income of the recipient under section 71. Child support payments, on the other hand, are nondeductible by the payor and are specifically excluded from the definition of alimony and thus not includable in the gross income of the payee parent under section 71(c).

To determine whether any portion of the payment is child support, we look solely to the language contained in the court order itself. See sec. 71(c)(1). The language of section 71(c)(1) is clear that for payments to be child support, the written divorce instrument by its terms must fix a sum which is payable as child support. It is inappropriate, in light of this clear statutory language, to look beyond the written instrument

---

[3]The amount of child, spousal support, or alimony pendente lite "shall be determined in accordance with the support guidelines" either by using the net income formula or by using charts derived from the formula, called "grids". Pa. R. Civ. Proc. 1910.16-1(b); Pa. R. Civ. Proc. 1910.16-1, Explanatory Comment C.2; Pa. R. Civ. Proc. 1910.16-3; see also Ball v. Minnick, 648 A.2d 1192 (Pa. 1994).

to examine what effects, if any, are made by operation of State law.

If Congress had intended for us to look beyond the written instrument, it would have amended section 71(c)(1) to so reflect. Indeed, Congress has addressed the issue of whether alimony can be determined through operation of law.  Section 71(b)(1)(D), as originally enacted, provided that for a payment to be considered alimony, the divorce instrument must state that there was no liability to make a payment after the death of the payee spouse.[4] This language was deleted in 1986, and section 71(b)(1)(D) now provides that if the other requirements are met, a payment may be alimony if State law terminates the payor's liability at the death of the payee spouse.  See Cunningham v. Commissioner, T.C. Memo. 1994-474.  If Congress had intended that child support payments be fixed by operation of law, it certainly could have amended the language of section 71(c)(1) to accomplish this goal much like it did with the language of section 71(b)(1)(D).

We conclude, therefore, that because the court order does not specifically fix a portion of the $718 monthly payment as

---

[4]See Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 422(a), 98 Stat. 793, 795-796.  DEFRA also enacted sec. 71(c)(1) which required the divorce or separation instrument to fix the amount of child support.  This provision was formerly contained in sec. 71(b).

child support, the entire amount of such payments received by petitioner in 1994 and 1995 is alimony and includable in income.

Delinquent Utilities

The family court order required Mr. Simpson to pay $70 per month toward the delinquent utilities debt. These payments were not fixed as child support by the court order, and therefore do not represent child support. See sec. 71(c).

Petitioner's argument that these payments were not made on her behalf is twofold. First, she claims that no payments were made at all to the utilities companies because the debt was completely paid off prior to 1994. Second, she claims that even if the $70 payments were made, they were made only in 1994, and the utilities were listed in Mr. Simpson's name, not hers. Therefore, petitioner argues, the delinquent payments were made for Mr. Simpson's own benefit, not on her behalf.

But petitioner and her children were the only members of the household at the time the delinquent utilities were accrued, so she and the family were the beneficiaries of the payments. Such payments made on behalf of a former spouse represent alimony if paid pursuant to a divorce decree or separation agreement not specifically fixing a portion of the payments as child support. See Graham v. Commissioner, 79 T.C. 415 (1982) (payments by former husband for utilities on a family home were alimony when

divorce decree did not fix certain portion of payments as child support).

Here, Mr. Simpson made payments toward the delinquent utility bill that accrued after he left the marital residence. The utility payments were for expenses incurred for the family home. We have held that payments by a former husband for utilities on a family home, which he made in support of his former wife and children, were alimony. See Graham v. Commissioner, supra. This is true even if the husband was contractually obligated to the utility companies to make the payments. See Zampini v. Commissioner, T.C. Memo. 1991-395.

Accordingly, to the extent Mr. Simpson actually made the $70 monthly payments for delinquent utilities, they are includable in petitioner's income as alimony. The record reflects that the total delinquent utility liability was paid off sometime before 1995. Thus, there were no payments made to petitioner or on her behalf for delinquent utilities in 1995.

As for 1994, petitioner could not establish the number of months for which Mr. Simpson paid the $70 to the utilities companies. She did, however, through her own testimony and the testimony of Mr. Simpson, provide a reasonable estimate of the number of payments made in 1994. Based on the information contained in the record, we conclude that Mr. Simpson made three

monthly payments of $70 in 1994, totaling $210.  This amount shall be included in petitioner's income for 1994.

Marital Mortgage

Mr. Simpson paid $357 each month during 1994 and 1995 to the bank for the mortgage on the family home pursuant to the court order.  Petitioner argues that 100 percent of this amount is excludable from her income.  Petitioner bases this argument on her contention that Mr. Simpson did not inform her upon making these payments what portion was attributable to her liability on the debt, and what portion was for his own liability on the debt. She argues that Mr. Simpson's payments toward the mortgage were therefore not made on her behalf.

Whether petitioner received notice from Mr. Simpson of what he intended the payments to be bears no relevance to petitioner's tax liability for 1994 and 1995.  Petitioner knew from the court order that Mr. Simpson was to make the monthly $357 mortgage payments.  Petitioner's duty to report these payments on her own return does not depend on how Mr. Simpson treated the payments or what he otherwise believed the nature of these payments to be.

The payments were subject to a contingency, petitioner's death, which is reflected in the terminable upon death provision contained in the court order.  The court order also specified that Mr. Simpson make the payments "For the support of" his wife and children.

The record reflects that petitioner and Mr. Simpson owned their home as tenants by the entirety during the taxable years at issue. A tenancy by the entirety vests in each spouse a present interest in the jointly held property. See <u>Mirsky v. Commissioner</u>, 56 T.C. 664, 672-673 (1971). Typically, where there is joint ownership of property, the husband and wife are each personally liable for the mortgage payments. See <u>Taylor v. Commissioner</u>, <u>supra</u>. A payment by one spouse discharges the legal obligation of the other spouse to the mortgage lender and each spouse is entitled to a contribution of one-half for each payment from the other spouse. See <u>id.</u>; <u>Zampini v. Commissioner</u>, <u>supra</u>.

Generally, where an agreement or court order imposes the obligation for the entire mortgage payment on the husband, he no longer has a right of contribution from his wife. See <u>Taylor v. Commissioner</u>, <u>supra</u>. Thus, when the husband makes a mortgage payment, he confers a current benefit upon the wife by discharging her legal obligation to the mortgage lender and relieves her of her obligation to contribute. See <u>id.</u>

In 1994 and 1995, Mr. Simpson and petitioner were jointly liable to the lender for the mortgage on the marital home. Accordingly, with respect to the $357 mortgage payments, half the payments Mr. Simpson made conferred a benefit on petitioner and thus are alimony includable in petitioner's income. The other

half reduced Mr. Simpson's own obligation and were not made on petitioner's behalf.

Home Equity Loan

We now turn to the issue of whether the $142 monthly payments toward the home equity loan constitute alimony to petitioner. The full home equity loan monthly payment was $474, which Mr. Simpson paid in full each month. Out of this amount, the court order required Mr. Simpson to allocate a portion of the total amount due, or $142, to be paid on petitioner's behalf.

A portion of the loan proceeds was used to finance the purchase of a Buick Regal by Mr. Simpson in 1989 and retained by him after he and petitioner separated. The remaining portion of the loan proceeds was attributable to joint credit card debt accrued before he and petitioner separated in 1990. It is for this portion of the debt that the family court ordered Mr. Simpson to pay $142 on petitioner's behalf.

As previously stated, payments are alimony to the extent they satisfy an obligation of petitioner. See Taylor v. Commissioner, supra. We find no significant difference between the payments made on petitioner's behalf toward the marital mortgage and the payments made on petitioner's behalf toward the home equity loan. In both instances, the debt was secured by the marital home, and petitioner and Mr. Simpson are jointly liable to the lender for the payment due each month. Mr. Simpson made

the entire home equity loan payment of $474 each month and therefore had a right of contribution from petitioner of one-half, or $237.  See Taylor v. Commissioner, supra.  The family court ordered that Mr. Simpson pay, on petitioner's behalf, a lesser amount of $142 each month toward this obligation, and we find that amount to be alimony to her.

The record reflects that the home equity loan was paid off before 1995.  Petitioner offered no evidence to show how many payments were made in 1994.  Accordingly, we find that the $142 alimony payments were made through the entire taxable year 1994.

To reflect the foregoing,

Decision will be entered

under Rule 155.